UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

**DANIEL EVANS**,                                                    File No. 1:24

   Plaintiff,                                                               Hon. _____

v.

**CITY OF WHITE CLOUD** and
**APRIL STORMS**, in her individual
and official capacities**,**

   Defendants.
_____

# COMPLAINT AND JURY DEMAND
_____

### COMPLAINT

Plaintiff Daniel Evans, by and through his attorneys, Pinsky Smith, PC, states as follows:

### JURISDICTION, VENUE, AND PARTIES

1. This is an action requesting the Court to remedy violations of Plaintiff's right to Due Process of Law under the Fourteenth Amendment of the Constitution, pursuant to 42 U.S.C. § 1983, and the First Amendment of the Constitution.

2. This action includes allegations of violations of Plaintiffs' rights under Michigan's Whistleblowers' Protection Act, Mich. Comp. Laws § 15.361 *et seq.* ("WPA"); defamation laws, violations of the Open Meetings Act, and amounted to Tortious Interference with Business Relationships.

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

4. Plaintiff is a resident of Newaygo County, Michigan, and the Western District of Michigan, Southern Division, and was the Chief of Police of the City of White Cloud.

5. Defendant City of White Cloud ("the City") is a city within the State of Michigan and does business in the Western District of Michigan, Southern Division.

6. Defendant April Storms is the City Manager and City Treasurer. She works within the City of White Cloud, County of Newaygo, Michigan.

7. The acts that are the subject of this action occurred in Newaygo County, Michigan.

8. Venue is proper within this judicial district under 28 § 1391(b).

## FACTUAL ALLEGATIONS

9. Plaintiff relies on all prior allegations as if restated herein.

10. Plaintiff was an excellent leader of the White Cloud Police Department for eight (8) years. He had worked for the City of White Cloud in part-time and full-time capacity over the course of several years prior, beginning in 2006.

11. In 2016, Plaintiff was recommended for the Chief of Police role and was appointed by the City Council as Chief of Police unanimously. He proudly accepted the role and with honor and served the City of White Cloud as their Police Chief. He had good relationships with his officers and with members of other police

agencies, and with members of the public. Plaintiff and his wife and children had made a home in White Cloud over the past couple decades.

12. Plaintiff received excellent evaluations and never had any discipline up until the summer of 2024, and had a good working relationship with all of the City Managers he worked under, including Defendant City Manager April Storms.

13. There were two significant safety issues that Plaintiff became concerned with and had brought to the attention of City administrators in the Spring and Summer of 2024. While not a part of his job duties, these matters were of concern to him for the citizens of the City and County, as well as any visitors to the area. One was concerning the City water pump (or water lift) – where the surrounding fencing and other protective equipment of the area was in terrible shape and left it open to negligent or intentional actions that could bring great damage to the public. The second concern was the fencing to keep people from accessing the dam. It was also faulty, rusted, and without proper signage.

14. These were hazardous conditions exposing the public to grave danger that was being ignored by those in control of the funds and means to do something about them.

15. He brought the issues to the attention of the City Manager, Defendant April Storms, and Department of Public Works supervisor Donald Barnhard several times both verbally and via email. Neither Storms nor Barnhard seemed to be interested in seriously addressing these dangerous circumstances, but Storms said for Plaintiff to give it about a month and a half and something will be done.

16. Defendant Storms then subsequently issued a letter to Plaintiff for an alleged incident (the documentation contained untrue statements by Defendant Storms) in which Plaintiff took some responsibility, but no actual discipline and it did not result in any missed work or pay. She then wrote Plaintiff up for another situation that was completely and entirely without merit. These were the first and only times Plaintiff was *ever disciplined at any time in his professional career with the City of White Cloud.*

17. In August of 2024, Plaintiff formally met with Defendant Storms and DPW Supervisor Barnhard about the seriousness of the two hazardous property conditions and the fact that it had been months since the two of them had agreed something would be done about the hazardous situations. Both the Defendant City Manager and DPW Supervisor Barnhard were upset with Plaintiff for bringing the issue up again. When Plaintiff brought up that the situations could cause tremendous liability for the City or County, Sup. Barnhard responded that even if they were fixed, they would get sued anyway. That was upsetting to Plaintiff.

18. Also in August of 2024, Defendant Storms performed an annual evaluation for Plaintiff that was very good. In that evaluation there were nearly all very positive comments and scores – no mention of poor leadership qualities, or complaints against him or anything related to the good performance of his job. This was not surprising as all of Plaintiff's annual evaluations were excellent.

19. Even after meeting where the seriousness of the issue was discussed and the relative ease of the way to fix the problem, nothing had been done by the

last week of September.

20.     On Friday September 27, after seeing children exposed to the dangers of one of the hazardous conditions, where he saw that a couple kids had gotten around the fence near the dam to go fishing, Plaintiff wrote two official reports on these serious issues of public concern and submitted it into the police system. Plaintiff intent was to notify the EGLE or other relevant State agency early the following week after determining the best course of action. (See Exhibits A and B).

21.     On Friday September 27, one of Plaintiff's officers was also filing reports, and called Plaintiff when the officer saw that Plaintiff had filed his reports. The officer inquired into the circumstances surrounding the reports and asked if he needed to do anything about them. Plaintiff responded that there was nothing for the officer to concern himself with at this time and that Plaintiff was going to deal with it later. Upon information and belief, Defendant Storms was notified by the officer that the reports in question had been filed.

22.     On Tuesday October 1, Defendant Storms came into Plaintiff's office with two other officials and fired him on the spot. There was no notice of his termination, no reasons given for his termination, no pre-termination hearing, nor any allowance for Plaintiff to defend himself. He had not been suspended pending investigation and, in fact, there was no investigation. He was escorted out of the building by the County Sheriff and had to call his wife to pick him up from work.

23.     Upon information and belief, the termination took place without input of the City Council, without notice, and without any sort of hearing.

24. Not coincidentally, the hazardous conditions surrounding the water-lift system were magically fixed and the road over the dam was suddenly closed for repairs within days of Plaintiff's termination.

25. Defendant Storms wrote a defamatory letter with contrived pre-textual reasons for Plaintiff's termination to the City Council, as well as to MCOLES, after she terminated Plaintiff. She foisted additional hardship and reputational damages onto Plaintiff.

26. The October 9 letter said such knowingly untrue things: that there were complaints that Plaintiff had a practice of humiliating members of the public as well as breaching professional confidentiality rules, created a hostile and intimidating environment, fostered an environment of distrust, and that his "nit picking" had severely affected department morale. None of these things were true, there was no evidence of such things happening, and, most importantly, not one fact of any of the situations brought up in this document were discussed with Plaintiff before his termination, nor written in the City Manager's evaluation of his work performance just weeks prior.

27. A special closed meeting took place on November 20, 2024, was arranged by the parties' attorneys to discuss post-termination potential actions on the part of the City Council, but nothing came to fruition from that meeting.

28. Defendant Storms put an ad for the White Cloud Police Chief in the local paper, immediately after the firing to further humiliate Plaintiff. It was highly unusual to do so, and the intention was to spread the word to the community that

Plaintiff was fired.

29. Upon learning that Plaintiff may be looking for work, Plaintiff was immediately called by another area police department and asked to interview for a position with this police agency. He went through the application and interviewing process, was given a conditional offer of employment to be an officer/detective with the Lake County Sheriff's Office, then later potentially promote into leadership in the Spring of 2025.  After three-and-a-half weeks into the process and waiting for one more test, Plaintiff was called by the hiring contact and told that the offer was rescinded after learning additional information.

30. Upon information and belief, Defendant Storms or an agent of Defendant Storms had uttered falsehoods about Plaintiff and destroyed his ability to be hired.

31. Plaintiff is unemployed and now virtually unemployable in his field. This is due to Defendant Storms' and the City's actions and untrue words and information publicized to others, and his reputation has been destroyed.

## COUNT I

## VIOLATION OF DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT OF THE CONSTITUTION

32. Plaintiff relies on all prior allegations as if restated herein.

33. Plaintiff Dan Evans was appointed by a City Council by vote to be the Chief of Police and was subject to a clearly stated progressive discipline policy through the City's policies and manuals which created a legitimate expectation of

for cause employment.

33. [sic] 34.    These facts created a reasonable expectation and legally-enforceable term of employment that Defendants offered "just cause" employment protection to Plaintiff.

35.    Plaintiff has a property interest in his employment pursuant to the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, and *Loudermill v. Cleveland Board of Education*, 470 U.S. 532 (1985) ("*Loudermill*"). Defendants could only lawfully terminate Plaintiff's job position if they did so after providing him required due process of law, and if they had a "just cause" reason for firing him.

36.    Even if Plaintiff did not have a property interest in his position as the Chief of Police, he certainly had due process rights to notice and hearing, and ability to face any allegations or accusations against him and be able to offer evidence to support his defenses. He was the White Cloud Police Chief appointed by the White Cloud city council.

37.    On October 1, 2024, Defendants discharged Plaintiff without providing him with either a fair pre-termination notice and hearing, and/or post-termination hearing, contrary to the Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983; and *Loudermill*, thereby depriving him of due process of law.

38.    On October 1, 2024, Defendants discharged Plaintiff without having sufficient cause and reason for the termination, and in retaliation for his Protected Activity.

39.    As a result of Defendants' failure to provide a fair pre-termination

and/or post-termination due process, Defendants are liable to Plaintiff for damages, including lost wages and benefits; future lost wages and benefits and/or reinstatement to his prior or equivalent position; compensatory damages for emotional and mental distress; attorney fees and costs; and punitive damages.

40. Similarly, as a result of Defendants' failure to have sufficient cause and reason for Plaintiff's termination, Defendants are liable to Plaintiff for damages, including lost wages and benefits; future lost wages and benefits and/or reinstatement to his prior or equivalent position; compensatory damages for emotional and mental distress; attorney fees and costs; and punitive damages.

**WHEREFORE**, Plaintiff requests that the Court restore him to his job position and grant him relief in an amount as determined by a jury, including reasonable attorney's fees and costs, plus interest and costs, pursuant to 42 U.S.C. § 1988.

## COUNT II

### VIOLATION FIRST AMENDMENT OF THE CONSTITUTION

41. Plaintiff relies on all prior allegations as if restated herein.

42. Plaintiff engaged in political speech when he voiced his concerns regarding dangerous and hazardous conditions that other departments of the City were refusing to address, which is protected by the First Amendment.

43. Defendants have treated Plaintiff differently and made decisions about his employment based on his speech and vocalizing his concerns for the public at large. Plaintiff's communications to the City Manager, to Department of Public

Works Supervisors and others about the failure to fix the hazardous conditions is protected speech. The reports Plaintiff filed on September 27, 2024 are protected speech.

44. Defendants' stated reasons for terminating Plaintiff's employment are neither legitimate, correct, nor the actual motivations for their actions. These Defendants' stated reasons are a pretext for unlawful retaliation which violates the First Amendment.

45. Defendants are state actors.

46. The actions of Defendants violated Plaintiff's First Amendment rights.

**WHEREFORE**, Plaintiff requests that the Court restore him to his job position and grant him relief in an amount as determined by a jury, including reasonable attorney's fees and costs, plus interest and costs, pursuant to 42 U.S.C. § 1988.

## COUNT III

## VIOLATION OF THE MICHIGAN WHISTLBLOWER'S PROTECTION ACT

47. Plaintiff relies on all prior allegations as if restated herein.

48. Plaintiff is an "employee" as defined by WPA.

49. Defendants are an "employer" and "public bodies" as defined by WPA.

50. The City of White Cloud is a "public body" as defined by WPA. The State of Michigan is a "public body" as defined by WPA.

51. Defendants engaged in acts of retaliation toward Plaintiff because he reported and/or was "about to report" their reports of violations of safety violations,

law and/or regulations to public bodies, i.e., Defendant City and the State of Michigan, and terminated Plaintiff Dan Evans' employment because of Plaintiffs' verbal complaints, written reports, and knowledge he was about to report such violations to the State of Michigan.

52. Defendants' termination of Plaintiff Daniel Evans is a violation of WPA, for which Defendants are liable to Plaintiff for damages under WPA.

**WHEREFORE**, Plaintiffs request that the Court grant the following relief: reinstate Plaintiff to his position as Police Chief of the City of White Cloud; award Plaintiff economic and compensatory damages in an amount that would fully compensate him for the injuries alleged herein resulting from the violation of WPA, including damages for mental anguish and emotional distress; award Plaintiff exemplary damages; award Plaintiff costs and reasonable attorney fees; award Plaintiff such other relief as may be just and equitable.

## COUNT IV

### VIOLATIONS OF THE MICHIGAN OPEN MEETINGS ACT

53. Plaintiff relies on all prior allegations as if restated herein.

54. The Open Meetings Act applies to the White Cloud City Council.

55. The OMA requires that all deliberations and decisions of a public body must take place at a public meeting in an accessible place open to the general public at which a person can address the meeting. MCL 15.263(1).

56. The OMA requires that all deliberations of a public body constituting a

quorum of its members must generally take place at a meeting open to the public. MCL 15.263(3).

57.  The OMA does not allow a public body to go into closed session to discuss the termination of a public employee appointed by the City Council without the approval of the employee in question.

58.  The OMA does not allow a public body to meet behind closed doors or go into closed session to discuss a termination of a public employee after the termination has already occurred.

59.  Defendants did not have a valid, lawful reason to fire Plaintiff without notice or hearing.

60.  The OMA required any deliberation about Plaintiff's employment to occur in a public meeting prior to the time he was terminated.

61.  Defendants' decision fire Plaintiff disregarding the requirements of the OMA session violated the OMA.

62.  Defendants' violation of the OMA was intentional.

63.  Accordingly, Plaintiff is entitled to relief under Section 10, 11 and 13 of Open Meetings Act, MCL 15.271.

**WHEREFORE**, Plaintiff requests that the Court rule that the OMA was violated by Defendants, restore him to his job position and grant him relief in an amount as determined by a jury, including reasonable attorney's fees and costs, plus interest and costs, pursuant to 42 U.S.C. § 1988.

## COUNT V

## DEFAMATION

64. Plaintiff relies on all prior allegations as if restated herein.

65. Defendants' agents made false and defamatory statements about Plaintiff to the City Council, White Cloud community, MCOLES, and the public at large which included potential future employers.

66. Defendants intentionally painted Plaintiff in a false light when its agents issued false statements through its letters and publications. Defendants' officials made intentional misstatements and misleading intimations in order to accomplish what Defendants' officials saw as a benefit to Defendants: to attempt to boost public opinion for its decision and to attempt to limit questions about why it terminated Plaintiff – all to the great detriment and damage to Plaintiff.

67. Defendants painted Plaintiff in a false light and stated intentional falsehoods in its letters and publications with actual malice toward him and his reputation. Defendants acted in reckless disregard for the truth when it uttered the falsehoods about Plaintiff.

68. The falsehoods in Defendants' letters and publications caused special harm to Plaintiff because they were made to the White Cloud community, which included Plaintiff's colleagues and fellow community members.

69. Through its publication to the White Cloud community, Defendants' letters and publications damaged Plaintiff's professional reputation and future professional opportunities.

70. Defendants defamed Plaintiff when its agents committed the acts as aforesaid.

71. Plaintiff has suffered irreparable harm and damages in that he has been unlawfully defamed in the White Cloud community.

**WHEREFORE**, Plaintiff requests that the Court grant him relief in an amount as determined by a jury, for damage to his reputation, including reasonable attorney's fees and costs, and exemplary damages plus interest and costs.

## COUNT VI

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS OR EXPECTATION

72. Plaintiff relies on all prior allegations as if restated herein.

73. Plaintiff had a business relationship with MCOLES (Michigan Commission on Law Enforcement Standards) regarding his licensing as a police officer in the State.

74. His continued maintenance of the standards required by MCOLES had a reasonable likelihood of future economic benefit to Plaintiff.

75. Plaintiff also had a business expectancy with Lake County Sheriff's Office as they had offered him a job in a position as a police officer.

76. Defendants knew of these relationships and expectancies.

77. Defendants, by communicating false and misleading facts about Plaintiff and his performance as an officer, intentionally and improperly interfered with these business relationships and expectancies.

78. Defendants caused disruption and/or termination of these relationships and expectancies.

79. Plaintiff was and is economically damaged because of Defendants conduct.

WHEREFORE, Plaintiff requests that the Court grant him relief in an amount as determined by a jury, for damage to his reputation, including reasonable attorney's fees and costs, and exemplary damages plus interest and costs.

|  |  |
|---|---|
|  | PINSKY SMITH, PC |
|  | Attorneys for Plaintiff |

Dated: December 30, 2024    By:    /s/ Katherine Smith Kennedy
　　　　　　　　　　　　　　　　Katherine Smith Kennedy
　　　　　　　　　　　　　　　　146 Monroe Center St NW, Suite 418
　　　　　　　　　　　　　　　　Grand Rapids, MI  49503
　　　　　　　　　　　　　　　　(616) 451-8496
　　　　　　　　　　　　　　　　kskennedy@pinskysmith.com

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

                                                                         PINSKY SMITH, PC
                                                                         Attorneys for Plaintiff

Dated: December 30, 2024           By:    /s/ Katherine Smith Kennedy
                                                                       Katherine Smith Kennedy
                                                                       146 Monroe Center St NW, Suite 418
                                                                       Grand Rapids, MI  49503
                                                                       (616) 451-8496
                                                                       kskennedy@pinskysmith.com